UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:14-CR-291-1 |
| | § | |
| JOSUE DEPAULA | § | |
| | § | |
| | § | |

## ORDER DENYING MOTION TO SUPPRESS

Defendant Josue DePaula (DePaula) is charged in a three-count indictment with possession with intent to distribute more than one hundred grams of heroin, conspiracy to possess with intent to distribute heroin, and possession of cocaine. D.E. 10. Before the Court is DePaula's Motion to Suppress Evidence (D.E. 28), arguing that the heroin and cocaine found on his person is the result of an illegal search and seizure in violation of the Fourth Amendment. For the reasons set out below, the motion is DENIED.

## FACTS

On March 30, 2014, at around 2:00 p.m., a red Chevrolet Suburban was stopped at the United States Border Patrol's Sarita checkpoint. At the primary inspection point, Agent Joseph Corona (Corona) questioned the driver, Cesar Rodriguez (Rodriguez), and his unnamed male passenger about their citizenship and learned that they were Puerto Rican. When Corona pressed for details regarding the five-day trip that they claimed to have made to visit Brownsville, Texas, Rodriguez had no coherent story about where he had been or who he had been "hanging out" with. He could not identify any names or

places. So Corona, a five-year veteran of the Border Patrol, became suspicious and referred Rodriguez and his passenger to secondary inspection.

Rodriguez consented to the secondary inspection of the vehicle and he and his passenger waited in the checkpoint's regular waiting area. The canine inspection was negative. However, Corona searched a number of bags located in the rear area of the Suburban and found female clothing, including a top with spaghetti straps, a bra, and other clothing and personal items. Rodriguez claimed that he did not know the name of the woman the clothing belonged to, but when asked where she was at that time, he responded that she was on a bus. Agent Corona knows from his experience that vehicles often travel in tandem with people on buses in the course of smuggling illegal aliens or narcotics.

Upon further inspection, Agent Corona found a birth certificate for a white female named Vanessa Athan, along with a sheriff's office booking sheet. Agent Corona asked Rodriguez if he had ever been arrested, and Rodriguez responded affirmatively. When Agent Corona asked for consent to conduct a criminal history search on Rodriguez, Rodriguez agreed and produced his driver's license. The search revealed convictions for narcotics trafficking, including heroin and cocaine.

No narcotics were found on Rodriguez, his passenger, or in the Suburban, so they were released to continue their northbound travel. However, Agent Corona asked another agent to drive ahead and watch for them to see what they did. The dispatched agent did not see the Suburban after 10-15 minutes despite the fact that it would have taken only 7-9 minutes to make that drive.

Agent Corona advised agents arriving for the next work shift of the suspicious Rodriguez vehicle and suggested that they check any buses for Vanessa Athan and narcotics. About twenty to thirty minutes after the Rodriguez vehicle passed through the Sarita checkpoint, a bus arrived. Agents Kevonte Wilson and Carlos Lopez conducted an immigration inspection of the bus, with Agent Wilson, a seven-year Border Patrol veteran, starting at the back. Agent Wilson encountered Vanessa Athan and noticed that she was sitting on a bench near another individual, Josue DePaula. Agent Wilson believed that the two were traveling together because they were occupying a bench that was designed for three persons and did not have an empty seat between them and were not separated by their bags.

As Agent Wilson and Agent Lopez met in the middle of the bus, Agent Wilson informed Agent Lopez that Vanessa Athan was on the bus and they decided to empty the bus of passengers so that they could do a canine inspection for narcotics. Wilson thought it was interesting that DePaula, coming from the back of the bus, was one of the first to exit, without Athan. Agent Lopez asked DePaula if he would speak with him and DePaula, who appeared to be fully coherent and able to understand, agreed without any objection.

In the course of the conversation, Agent Lopez felt that DePaula's explanation of his travels was inconsistent and he asked to pat down DePaula for security purposes. DePaula agreed, and Agent Lopez detected a mass on DePaula's leg. But when asked about it, DePaula denied having anything attached to his leg. Agent Lopez handcuffed DePaula with his hands behind his back and removed him to a holding cell where he

discovered three bundles of heroin and one bundle of cocaine strapped to DePaula's leg with electrical tape.  This took place within 20-25 minutes of when the initial immigration inspection began.  Agent Lopez read DePaula his Miranda rights. Nonetheless, DePaula continued to respond to questions and raised no objection to any part of the interview, pat-down, or search.

## DISCUSSION

DePaula now complains that:  (1) the agents did not have any probable cause or reasonable suspicion for the initial *Terry* stop; (2) the detention exceeded what was reasonable for a *Terry* stop, making any consent tainted; and (3) the totality of the circumstances shows that DePaula's consent was not voluntary.  Because this case involved a warrantless search, the government bears the burden of proof to show that it was consistent with the Fourth Amendment.  *E.g.,United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993).

The principles established in *Terry v. Ohio*, 392 U.S. 1 (1968) govern stops at immigration checkpoints.  *United States v. Ellis*, 330 F.3d 677, 679-80 (5th Cir. 2003). DePaula argues that the only purpose of the stop—to determine citizenship—had ended prior to the discovery of any controlled substances.  The purpose of the stop involving DePaula began with the ordinary immigration function of the Border Patrol checkpoint. However, once Vanessa Athan was found on the bus, the reasonable suspicion created by the encounter with Rodriguez and the red Suburban was triggered to allow the agents to determine what, if any, smuggling operation she may have been engaged in.

The agents testified credibly as to their individualized suspicion of wrongdoing to support the drug interdiction effort arising from the initial immigration purpose of the stop. *See United States v. Portillo-Aguirre*, 311 F.3d 647, 654 (5th Cir. 2002). The length of an immigration stop may be lawfully extended if there is reasonable suspicion of criminal activity. *United States v. Machuca-Barrera*, 261 F.3d 425, 434 (5th Cir. 2001). Reasonable suspicion was established based on the following: Rodriguez told a story of his trip to Brownsville that was not credible, Rodriguez and another man were traveling with a woman's clothing and belongings, they denied that the clothing belonged to them and claimed it belonged to a friend whose name they did not know, and that friend was on a bus. The agents' experience allowed them to reasonably believe that the red Suburban was traveling in tandem with a bus in a criminal activity consistent with the smuggling of narcotics. And Rodriguez was a convicted narcotics trafficker. Once the immigration stop revealed Vanessa Athan's presence on the bus, the criminal activity suspicion was sufficient to justify further investigation. DePaula's first argument that the agents did not have probable cause or reasonable suspicion for the initial *Terry* stop is rejected.

The time between the initiation of the stop and the discovery of the controlled substances on DePaula was, according to the testimony, 20-25 minutes. The Court finds that, under the circumstances, this amount of time was appropriate for the investigation and did not transform the stop into an illegal detention that negated DePaula's free will. The agents were still involved in the canine inspection when Agent Lopez discovered the

mass under DePaula's pants, requiring a further search. DePaula's second argument that the detention exceeded what was reasonable for a *Terry* stop is rejected.

Under the totality of the circumstances, DePaula was not detained beyond the time necessary for the *Terry* stop when the controlled substances were found on his person. There is no evidence of coercive police procedures. Instead, the evidence reflects that DePaula was relaxed and cooperative, aware of his rights, and sufficiently coherent to have voluntarily consented to the search that revealed the heroin and cocaine. *See generally, United States v. Shabazz*, 993 F.2d 431, 438 (5th Cir. 1993) (stating a six-factor test for voluntariness of consent). DePaula's third argument that the totality of the circumstances shows that DePaula's consent was not voluntary is rejected.

## CONCLUSION

For the reasons set out above, the Defendant's Motion to Suppress Evidence (D.E. 28) is DENIED.

ORDERED this 11th day of August, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE